UNITED STATES, Appellee

v.

Michael E. MOSQUEDA, Hospitalman
U.S. Navy, Appellant.

No. 95–0063.
CMR No. 93–0985.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 2, 1995.

Decided March 29, 1996.

For Appellant: *Major R.K. Stutzel,* USMC
(argued).

For Appellee: *Captain Daren K. Margolin,* USMC (argued); *Commander D.H. Myers,* JAGC, USN (on brief); *Lieutenant Commander David B. Auclair,* JAGC, USN, and *Lieutenant John R. Livingston, Jr.,* JAGC, USN.

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted by a panel of officer members at Manama, Bahrain, of taking indecent liberties with three children by displaying pornographic material to them, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was acquitted of five other offenses involving various forms of sexual abuse including sodomy, indecent acts, and indecent liberties. A seventh offense was dismissed. He was sentenced to a dishonorable discharge, confinement for 12 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged, except he changed the dishonorable discharge to a bad-conduct discharge. The Court of Military Review[1] affirmed in an unpublished opinion

1. *See* 41 MJ 213, 229 n. * (1994).

with one judge dissenting. We granted review of the following issues:

## I

WHETHER THE EVIDENCE ADDUCED AT COURT–MARTIAL WAS LEGALLY INSUFFICIENT TO SUPPORT THE FINDING OF GUILTY TO CHARGE II, SPECIFICATION 2, BECAUSE THE EVIDENCE FAILED TO ESTABLISH THAT APPELLANT COMMITTED AN ACT AMOUNTING TO THE TAKING OF INDECENT LIBERTIES WITH A CHILD OR THAT HE POSSESSED THE REQUISITE INTENT FOR THIS OFFENSE.

## II

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE DENIED A CHALLENGE FOR CAUSE AGAINST CAPTAIN TUFTS WHERE THE CAPTAIN HAD CONSULTED, OR ATTEMPTED TO CONSULT, WITH OUTSIDE SOURCES CONCERNING ISSUES CENTRAL TO THE FACTS IN QUESTION.

We need not address Issue I because we conclude that the military judge abused his discretion in denying a challenge for cause against one of the panel members.

## FACTS

Mid-trial, the defense learned that the President of the panel, Captain (CAPT) John Tufts, allegedly had improper contact with an outside party about the trial prior to findings. The military judge held a hearing with all parties present except the members in order to establish whether there was outside contact and the circumstances under which any such contact took place.

Commander (CDR) Jay Montgomery, the Force Surgeon, was called to testify. He stated that he had stopped by CAPT Tufts' office "to discuss some other issues." After seeing how "distressed" CAPT Tufts was, CDR Montgomery "asked him, as his physician, what was going on?" CDR Montgomery testified that CAPT Tufts responded by inquiring about the Commander's "experience with children," e.g., whether he "had seen cases like this, cases that would involve the allegations of incest or allegations of pedophilia." CDR Montgomery stated that he had and that they "troubled" him also. CDR Montgomery also testified that CAPT Tufts raised a question about "himself not knowing whether children can be led in a courtroom discussion." CDR Montgomery testified, "I think he's seen things on television and heard about things that 'Children sometimes change testimony, sometimes children make up things, sometimes children interpret things differently.'" He also testified that CAPT Tufts was not "asking, specifically," about the case, "but just, in general," whether that could happen. The Commander's response to CAPT Tufts was, "That depends on a case by case sort of thing, and it depends on how well the children had been prepared for the trial, how the trial was held." CDR Montgomery also testified that at one point CAPT Tufts did mention the name of someone "involved in the trial."

Upon completion of CDR Montgomery's testimony, defense counsel made a motion for mistrial on the basis that CAPT Tufts had "sought advice from a source regarding specific issues at hand in this case ... and received that information from a trained pediatrician." Defense counsel also explained that they sought a mistrial because the excusal of CAPT Tufts would result in a drop below quorum, but that excusal and replacement might be an "acceptable" option.

The judge then reopened *voir dire* of CAPT Tufts, who testified that he had spoken generally about the case and his "frustration with the process." His memory was fuzzy as to ever even having a conversation with CDR Montgomery. He did not recall ever discussing the specifics of the case, the names of anyone involved with the case, or the question of whether children could lie or be coached. He also described the conditions he was subject to when he had contact with CDR Montgomery, e.g., very long work days, an open bay office space, and contact with 50 to 100 people per day. CAPT Tufts described how those conditions affected his memory about whom he talked to and what topics he might have discussed. CAPT Tufts also described how people all over the base

knew about the court-martial and that some even knew more information than he did.

Defense counsel then made a challenge for cause against CAPT Tufts, arguing that information on whether children would lie could taint CAPT Tufts' decision in the case. The judge, however, denied the challenge for cause because it was his perception that CAPT Tufts "was seeking empathy" rather than "advice on the case" and that CAPT Tufts and CDR Montgomery did not discuss the substance of the case. The judge also noted that CAPT Tufts did not "remember the conversation" and, therefore, any matter discussed would not affect "his ability" to act as an "impartial member."

## DISCUSSION

Article 41, UCMJ, 10 USC § 841, codifies a servicemember's constitutional right to an impartial jury. To implement this right, the President, through his powers under Article 36(a), UCMJ, 10 USC § 836(a), created RCM 912(f), Manual for Courts–Martial, United States (1995 ed.). This rule governs member challenges and removal for cause. RCM 912(f) provides:

> (1) *Grounds.* A member shall be excused for cause whenever it appears that the member:
>
>     \*      \*      \*
>
> (N) Should not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.

■ Appellant argues that CAPT Tufts should have been excused under this provision because his improper contact with a third-party concerning specifics of the court-martial created substantial doubt about the fairness and impartiality of the court-martial. RCM 912(f)(1)(N). We agree.

The standard for reviewing a challenge for cause was discussed in *United States v. White*, 36 MJ 284, 287 (CMA 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 918, 127 L.Ed.2d 212 (1994), where we stated:

> A trial court's standard is to grant challenges for cause liberally. An appellate court's standard is to overturn a military

judge's ruling on a challenge for cause only for a clear abuse of discretion. This means that military judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate.

CAPT Tufts did not follow the instructions of the military judge not to engage in a conversation about the trial. Although we recognize that this does not create an irrebuttable presumption of prejudice, the potential for actual prejudice is elevated where it is likely that matters going to the heart of the case were discussed—namely, whether child witnesses are credible.

■ This Court, as well as the Supreme Court, has long recognized the dangers to impartiality posed by unauthorized communications between third parties and members of the jury. *See generally Mattox v. United States,* 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892); *United States v. Nigro,* 28 MJ 415 (CMA 1989). When, during a trial, there is evidence of such contact, it is the military judge's responsibility to hold a hearing with all interested parties permitted to participate in order to determine the circumstances, the impact thereof upon the juror, and whether the circumstances were prejudicial. *See Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982); *cf. Rushen v. Spain,* 464 U.S. 114, 118–20, 104 S.Ct. 453, 455–57, 78 L.Ed.2d 267 (1983).

Although the judge generally followed this procedure, he did not elicit any testimony from the member as to whether he felt he could remain as an impartial juror. *See, e.g., United States v. Nigro,* 28 MJ at 418 ("While a judge should not accept a perfunctory . . . [claim] of impartiality as conclusive, a member's unequivocal statement of a lack of bias can nevertheless carry weight."); *United States v. Smart,* 21 MJ 15, 20–21 (CMA 1985)(judge should have assured that the record contained answers which adequately rehabilitated member). The military judge also failed to assess the potential for actual or apparent prejudice where the member

likely heard extraneous information, mid-trial, as to an extremely important issue of the trial. *See United States v. Berry*, 34 MJ 83, 87–88 (CMA 1992).

■ Any determination of the potential impact of extrajudicial juror contact must involve an examination of the entire record, the extraneous information provided, when it occurred, its potential for bias, the strength of the evidence against the accused, and the issues at trial. Here the central issue was the credibility of the key child witnesses. The information potentially gleaned from the outside contact was crucial to the trial. Its potential for impact on the trial was great, given the weakness of the prosecution's case, as evidenced by his acquittal on all charges except the one where appellant's pretrial statement confirmed certain facts.

For these reasons, we hold that the military judge clearly abused his discretion in failing to liberally grant this challenge for cause.[2]

The decision of the United States Navy–Marine Corps Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge COX, Judge GIERKE, and Senior Judge EVERETT concur.

SULLIVAN, Judge (dissenting):

I would affirm. The majority holds that the judge "abused his discretion in failing to liberally grant this challenge for cause." 43 MJ at 494. In my view, the only abuse in this case is the child abuse of which appellant was convicted at the trial level. His conviction was affirmed by the court below with one dissent.

On Issue I (not answered by the majority), the children's testimony reveals that appellant not only allowed the children whom he was baby-sitting to view pornographic material, but he also observed and encouraged them to do the same. This testimony, if

viewed in a light most favorable to the Government, would allow a reasonable factfinder to conclude that appellant took indecent liberties with a child with an intent to gratify his sexual desires. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

On Issue II, the record clearly shows that the military judge took all reasonable and proper steps necessary to insure that an accidental contact between a juror and his doctor did not prejudice appellant.

In the present case, 6 days into the trial and after the Government rested, it was brought to the attention of the defense that Captain (CAPT) Tufts, a court member, had possibly communicated with an outside source regarding the case. Commander (CDR) Jay Montgomery, the NAVCENT [Naval Force Central Command] Force Surgeon, was called by the military judge and questioned regarding a conversation he had with CAPT Tufts. CDR Montgomery testified that he "stopped" by CAPT Tufts' office on another matter, "saw that he was distressed," and asked him if there was a problem.

The following dialogue occurred between the military judge, military counsel, CDR Montgomery, and CAPT Tufts with respect to the conversation between the Commander and the panel member:

A. I stopped by his office to discuss some other issues and saw that he was distressed. I asked him, as his physician, what was going on. And he mentioned that he was in the proceedings here and had, you know, and that as one who's not ever been involved in such things, found the testimony and the stories and things to be distressing to him. That really was about the extent of our conversation. We were putting together a stress reducing program for all members after the proceedings are over. As I remember, there was another—*somebody else was there and mentioned that we shouldn't be discussing*

---

2. We note that, even though granting a challenge may be inconvenient for the judge, the court members, the convening authority, and others, it is not an adequate ground to deny a challenge for cause. *United States v. Smart*, 21 MJ 15, 20–21 (CMA 1985).

*anything about the trial and so there wasn't much more said.*

Q. Did he discuss any particulars concerning the case or ask for any insight from you?

A. I don't recall any specific questions about any of the words that might have been used in here, medical words, that he wouldn't of understood. Now, he did mention, I—he mentioned the name of one of the—people involved in the trial here, but that was about all.

Q. So, he wasn't seeking solutions to any problems that he had regarding the events unfolding in the case?

A. For himself, or for his testimony here?

Q. Not his testimony. He's a member. He's a jury member.

A. The solutions he was beginning to ask were more personal for himself. He was concerned about things he was hearing, I could see, that was bothering him. I don't recall that he was asking me for advice as to how he should think about a case, or how he should think about a particular line of testimony.

\* \* \*

Questions by the individual military counsel:

Q. Sir, did Captain Tufts inquire with you, at all, about your experience with children?

A. Yes.

Q. And their responses to questions that you put to children?

A. I don't remember specifically. Do you have a specific question?

Q. What did he ask you about your experiences working with children?

A. He knew I had been a pediatrician before I became a family practitioner. He wanted to know if I had seen cases like this, cases that would involve the allegations of incest, or allegations of pedophilia, and things like that.

Q. Have you?

A. I have in my experience as a pediatrician, yes.

Q. Did you tell his [sic] as such, sir.

A. I said, "Yes, I had," but did not go into any details about the cases, as far as

how to make a diagnosis, if one could be made, or anything about psychological profiles. That sort of thing like that. Just with the answer that "I had seen cases and that they had troubled me also."

Q. Did he ask you how you knew if the children were telling you the truth?

A. I think he raised a question about not being—himself not knowing whether children can be led in a courtroom discussion. I think he's seen things on television, and heard about things that "Children sometimes change testimony,· sometimes children make up things, sometimes children interpret things different." He wasn't asking, specifically, about this case, but just, in general, "Can that happen?" I said that "That depends on a case by case sort of thing, and it depends on how well the children had been prepared for the trial, how the trial was held."

(Emphasis added.) The military judge then reopened the *voir dire* of CAPT Tufts, who testified in relevant part as follows:

MJ: Have you reviewed any of the evidence with anyone, including the Force Surgeon, and tried to get their aspect or opinion?

MEMBER (CAPT TUFTS): Absolutely not.

MJ: Lieutenant Metz?

IMC: Captain, have you discussed the Force Surgeon's background as a pediatrician?

MEMBER (CAPT TUFTS): I know he's a family practice [sic]. I think.

IMC: Have you asked him if he has any experience in pedophilia or child sexual abuse cases?

MEMBER (CAPT TUFTS): I don't even know what pedophilia means.

IMC: You haven't asked about his working with child sexual abuse victims?

MEMBER (CAPT TUFTS): I have not.

IMC: Did you have a conversation with Commander Montgomery, based on your frustrations, in trying to understand child witnesses?

MEMBER (CAPT TUFTS): No. Not that I can remember.

IMC: Did you ask Commander Montgomery whether children lie?

MEMBER (CAPT TUFTS): No.

IMC: Did you ask Commander Montgomery whether children can be coached to tell a story?

MEMBER (CAPT TUFTS): No.

IMC: Did you discuss those issues with anyone?

MEMBER (CAPT TUFTS): No.

*   *   *

IMC: You do remember having a conversation with Commander Montgomery?

MEMBER (CAPT TUFTS): We have a parallel frustration problem going on with the use of government vehicles, and I'm in the midst of trying to write an instruction which meets the letter of the law or the intent of the law, but it still provides some flexibility. And I'm not sure, at this point, I see 50, a 100 people a day, coming through my office—I work in an open bay office space. People come up to me all day about a thousand different things. And the specifics of individual conversations are pretty fogging [sic]. Since I've been putting in 18—14 to 18 hour days the last few days, because of this, my memory is a bit vague as to when I talked to whom about what. But, I don't believe I had any specific conversation with Commander Montgomery regarding the details of this case, other than my frustration over it.

The military judge ruled as follows:

I read the case law, and under consideration is the challenge for cause against Captain Tufts. The motion is denied. From hearing the testimony of Commander Montgomery and Captain Tufts, I don't—it's not my perception that he sought advice on the case. He was seeking empathy, at the most, according to Commander Montgomery's testimony, commiserating that these are difficult situations, and w[o]ndering if Commander Montgomery had faced them himself. Statements, perhaps, were made that courts-martial are frustrating. It doesn't appear that they talked any substance regarding this case. Of course, Captain Tufts said he doesn't have recall of the specific conversation. He did say that, as a result of his work schedule, he's talked to many people with other projects. Essentially, he doesn't remember the conversation, and I don't find that any matters have impacted on his ability to be an impartial member in the court-martial.

The military judge's reasoning is sound. Captain Tufts unequivocally stated that he did not discuss any specific facts or issues of the case. *See United States v. Nigro,* 28 MJ 415, 418 (CMA 1989). Furthermore, the evidence does not indicate that CAPT Tufts' conversation with CDR Montgomery affected his ability to be a fair and impartial member, especially in light of his lack of recollection of the particulars of the conversation. Thus, based on the testimony of CAPT Tufts and CDR Montgomery on the record, I conclude that the military judge did not clearly abuse his discretion in denying a challenge for cause against CAPT Tufts.